## THE STATE OF KANSAS V. MICHAEL ROARK.

1. CONTINUANCE; *Affidavit, How to be Treated.* Where in the trial of a defendant, charged with the commission of a felony, an affidavit for a continuance is filed by such defendant on account of an absent witness, and the prosecution consents that on the trial the facts alleged in the affidavit shall be read and treated as a deposition of the absent witness, such affidavit cannot afterward be impeached for want of diligence on the part of the defendant in procuring the attendance of such witness, or in taking his deposition as prescribed by law; nor by showing that the defendant had good reason to believe if the witness were. present and gave such testimony, it would be untrue; nor by proving the non-existence of the witness therein named. And further, *held,* that such affidavit should be read and treated in all respects as the deposition of the absent witness.

2. —————— *Right of Defendant as to Witnesses.* A defendant in a criminal prosecution is entitled, under the constitution, to compulsory process to compel the attendance of witnesses within the jurisdiction of the court, in his behalf.

3. —————— *Error.* Where material and necessary witnesses are·duly subpenaed in behalf of an accused, in a criminal prosecution, and such witnesses are within the jurisdiction of the court, *held,* error to force said accused to trial and to conclude the trial, against his protest, before the return of the compulsory process issued to bring the disobedient witness into court, in the absence of-any reason for it not being executed and returned.

### Appeal from Butler District Court.

INFORMATION for robbery in the first degree, alleged to have been committed by *Roark,* in Edwards county, in January, 1878. A change of venue was granted the defendant to Butler county, where the case was tried at the March Term, 1879, of the district court, the defendant found guilty as charged, and sentenced accordingly. *Roark* appeals to this court.

*A. H. Case,* for appellant:

The court erred in not granting the defendant time to procure the attendanceof his witnesses. (Gen. Stat. 1868, p. 846; §§ 164, 165, 166, 167; pp. 692, 693, §§ 324, 325,

331, 332, 334; 1 Gr. Ev. §§ 309, 311, 319.) The word "may" in § 331, means shall. (2 Bouvier's Law Dict.) The court erred in refusing the attachment asked for defendant's witnesses. (Statutes cited, *supra*; 38 Ind. 277; 39 id. 1; 42 id. 214; 34 Tex. 151; 12 Minn. 530.)

The evidence of Brown, Mallory and Anderson, was in reference to another affair, which in nowise tended to prove the offense charged, and should have been rejected. (14 Kas. 109; 20 id. 311.) The evidence of Davis should have been received. The evidence of Roark, upon the cross-examination, was incompetent; the depositions are to be read and treated as the evidence and depositions of the absent witnesses. (Gen. Stat., p. 689, § 317; p. 854, § 210; 17 Kas. 491.)

The curious, novel and erroneous proceedings of the court, left the appellant wholly at the mercy of the state and the corporation backing it; and the evidence permitted, and the wholesome instructions in reference thereto, completely finished his chances of earthly bliss, outside the walls of the penitentiary.

The court, as the record shows, erred in permitting the argument of counsel for the state. (33 Ga. 98.)

The court should have given instructions asked for by the defendant.

The jury may convict on the evidence of an accomplice, but the court should tell them how much weight they ought to give it. (20 Kas. 328; 19 Ohio, 131; 10 Ohio St. 287, 304, 305; 65 N. C. 288.)

The court instructed the jury that the defendant is charged with robbery in the first degree. If the information charges anything, it is larceny. (11 Ohio, 404; 3 Kas. 252.) The court informed the jury that there are three degrees of robbery, but it failed to tell them that they might convict of any but one; it told them what had been proved, and told them if they believed the evidence so by the court *stated* to be proved, they will convict the defendant of robbery in the first degree. This leaves it with the superior officer of the court to say what is, and what is not, the evidence in the case and the re-

sult thereof, without regard to defendant's evidence or question of reasonable doubt. ( 9 Kas. 200; 47 Ala. 659.) As well, also, have the following courts ( 24 Ark. 540; 36 Ill. 258; 40 Miss. 374) asserted that it is error for a court to assume the existence of facts which are in issue to be tried. And singling out facts ( 38 Mo. 213; 39 id. 59), or a commentary on the evidence, giving particular facts undue importance, have been considered heretofore, by some courts ( 26 Ind. 386; 2 Cold. 239; 36 Ill. 92; 38 id. 237; 15 Mich. 332; 37 Ala. 699; 30 Ga. 361; 4 Greene, 159; 7 Bosw. 396; 1 Ala. 178; 1 Wins.) erroneous.

The court, after permitting the prosecution to show that the depositions of Roark were his act, that in fact the witnesses had never been sworn, that it was all a mere affidavit for a continuance, instructs the jury:

"That good faith requires that they be heard and considered; and for the purpose of this case you will suppose that the witnesses appeared before a competent officer and swore to the facts therein set forth." [If they should suppose so, why allow them to be disproved? Going on, the court says,] "This is upon the theory that the defendant, after having used due diligence to obtain the personal appearance of these witnesses, has been unable to do so, and has thereby been prevented from obtaining this testimony. The question for the jury is, do you believe this testimony to be true? If the witnesses had actually gone before an officer and sworn to the facts as stated, do you feel justified under all the facts and *circumstances* and evidence in this case in believing and acting upon their testimony? Do you believe the defendant acted *in good faith* in making his affidavit for a continuance, and really and truly believed he could procure the witnesses named, and that they would testify as he says? Do you consider the witnesses worthy of belief? And are their statements reasonable and consistent with the evidence in the case and facts which are established to your satisfaction?"

This was telling the jury that the depositions were wholly unreliable, and was strictly a charge as to matters of fact. (110 Mass. 179.) The judge holds out to the jury that this species of evidence was a pretense without foundation in truth. (37 Tex. 366.) He tells them how material its

weight. (36 Ill. 349.) He suffers the evidence of the defendant to be destroyed; then tells them they are to receive it, but that it is of no weight. He tells them by his conduct of the trial, that this evidence was incompetent and worthless. In his instructions he says that the evidence was proper to go to the jury, but that they ought not to regard it. He tells the jury that "*The* question for them is, do you believe *this* evidence to be true?" *The* question for them, upon the whole evidence was, was the defendant guilty, or innocent? No witness had testified in regard to that part of this instruction, "Do you consider the witnesses worthy of belief?" But the court tells them, by its conduct of the trial, that they were men of straw; that they were unsworn, and were the mere creatures of the defendant's brain, to obtain a continuance. If the jury had any regard for the court, or their word, no one could doubt the result of a trial conducted as this was.

The opinion of the court was delivered by

HORTON, C. J.: Defendant was convicted in the district court of Butler county, of robbery in the first degree. From that conviction he appeals to this court. Various errors are alleged, but the most important and serious one called to our attention is the treatment by the court of the affidavit of the defendant read in evidence upon the trial. The defendant filed an affidavit for a continuance of the case over the term, on account of the alleged absence of certain witnesses. Thereupon the prosecution consented that the facts alleged in the affidavit might be read and treated as the deposition of said witnesses, but after the affidavit was read in evidence under the agreement, the court held that it could be impeached, on the grounds —1st, that the witnesses were unworthy of belief; 2d, that the defendant might with reasonable diligence have procured the attendance of the witnesses in court, or have taken their depositions as prescribed by law; 3d, that the defendant had good reason to believe at the time he made the affidavit for a continuance, that if the witnesses would testify,

as he alleged, the testimony would be untrue; and 4th, that there are no such persons in existence as those named in the affidavit.

After all the evidence had been produced in the case, the counsel for the prosecution, over the objection of the defendant, discussed the evidence contained in the affidavit, and asserted to the jury that the evidence was fictitious and a myth; that none of said witnesses named therein had been sworn or testified or given evidence; and that the evidence in the affidavit was a fraud and a put-up job, and rested solely upon the credibility of the defendant. In the charge to the jury, the court, in referring to the affidavit, said to the jury, against the objection of the defendant, "Do you believe the defendant acted in good faith in making his affidavit for a continuance, and truly believed he could procure the witnesses named therein, and that they would testify as he says?"

To the ruling of the court, that the evidence in the affidavit could be impeached on the ground that the witnesses were unworthy of credit, we perceive no objection, if the testimony in reference thereto was confined within proper rules, but the permission to impeach the affidavit for the other reasons given by the court was erroneous, and greatly prejudicial to the rights of the defendant. The course of argument pursued by the counsel for the prosecution in referring to the affidavit cannot be sustained, and the paragraph quoted above from the charge of the court was an improper direction to the jury. The affidavit in the case was read in evidence, upon the consent of the prosecution that the facts alleged might be read and treated as the depositions of the absent witnesses. Under this agreement and the law applicable to such cases, (Comp. Laws 1879, p. 643, § 317, p. 756, § 210,) it should have been read to the jury, and treated by the court as the deposition of the witnesses therein named. Section 364 of the code provides that "no exceptions to depositions other than for incompetency or irrelevancy shall be regarded unless made and filed before the commencement of the trial." Whether the defendant had used due diligence to obtain a

continuance was a matter to the court, preceding the argument to permit the affidavit to be read as a deposition, and after such agreement the question of diligence was immaterial. To permit the defendant's belief as to what the absent witnesses would testify to, if present, or the actual existence of said alleged witnesses to be put in issue, would bring new and independent matters before the court for trial, which would have the effect to extend the testimony outside of the points in issue in the case of a plea of not guilty to the charge of the information, and would require a defendant to be prepared to answer to particular facts, of which he had no notice. Under the construction and decision of the court, the consent to have an affidavit read as a deposition, would frequently result in entrapping a defendant in a net and render him absolutely defenseless. The consent would literally be the "apple to the eye, but ashes to the touch."

In the first place, parties are not allowed a continuance until they make a proper showing to a court; then the adverse party is under no obligation or compulsion to agree that on the trial, an affidavit deemed sufficient to justify a court to grant a continuance, shall be read as a deposition; but if such consent is given, it cannot be withdrawn, or changed after the trial is actually commenced. Again, if a party knowingly makes a false and corrupt affidavit to get an unfair advantage, or further time, he can be duly convicted therefor, but it would be hardly just or proper on a trial of a charge of robbery, to try a defendant for perjury. Complaint is further made to the refusal of the court to delay the trial, until the attendance could be obtained of certain material witnesses, who had been duly subpœnæd, and were within the jurisdiction of the court. As a new trial will be necessary, it is sufficient to say, that the defendant has a constitutional prerogative to have compulsory process to compel the attendance of witnesses in his behalf. (Sec. 10, Bill of Rights.) This privilege is stripped of all its benefits to a defendant in a criminal case, if such defendant is forced to trial, and his trial is concluded, before the return of com-

pulsory process issued to bring into court witnesses in his behalf, who have disobeyed subpenas duly served upon them. Of course, no court has the right to limit or deny this constitutional guaranty against the protest of an accused. If a defendant uses due diligence in asking for compulsory process, in having such process issued against a disobedient witness, the trial ought not to be concluded before the return of such process, or a reasonable showing made for its non-return. The judgment of the district court will be reversed, because of the errors commented upon, and a new trial awarded. The defendant will be returned from the penitentiary, and delivered over to the jailer of Butler county, to abide the order of the district court of that county.

All the Justices concurring.