[No. 1599.]

L. YORI, RESPONDENT, v. ELKAN COHN, APPELLANT.

TRIAL—CONTINUANCE—WITNESSES—ABSENCE. Where a defendant relying on promises of material witnesses, living without the state, who were not served with process, that they would be present at the trial, fails to take their depositions, a continuance will be allowed on an affidavit showing that they are prevented from attending by sickness. (MASSEY, C. J., dissenting.)

ON PETITION FOR REHEARING.

CONTINUANCE—ABSENCE OF WITNESS—FAILURE TO TAKE DEPOSITION—NEW TRIAL—STATEMENT OF CASE—IMPEACHMENT—SALE—CONDITION—WAIVER—APPEAL—HARMLESS ERROR—QUESTIONS CONSIDERED. 1. A continuance will not be granted by reason of the absence of witnesses residing outside the state, though such witnesses have promised to appear and testify, as the party relying on their testimony should have taken their depositions.

2. Where the parties fail to agree as to the statement of the case on motion for new trial, and the statement is settled by the court, as required by Civ. Pr. Act, 197, the certificate of the judge that the statement has been allowed and is correct cannot be impeached on appeal by extrinsic evidence, but can only be modified or corrected in the trial court.

3. A condition in a contract of sale that title shall not pass until the delivery of the bill of sale, being solely for the security of the vendor, the non-delivery thereof cannot be urged as a defense to an action for the purchase price, as showing the commencement of the action before the title has passed, as the vendor may waive such condition.

4. The admission of evidence having no bearing on any issue in a cause is harmless error.

5. Where the evidence shows that a judgment is so clearly right that it should not be reversed for error in admitting or excluding evidence or giving instructions, such error will not be considered on appeal. (FITZGERALD, J., dissenting.) Judgment and order appealed from affirmed, and former opinion reversed.

APPEAL from the First Judicial District Court, Douglas County; C. E. Mack, Judge.

Action by L. Yori against Elkan Cohn. From a judgment in favor of plaintiff and an order denying a new trial, defendant appeals. **Reversed.**

The facts sufficiently appear in the opinion.

*Trenmor Coffin, Samuel Platt,* and *D. W. Virgin,* for Appellant:

I. The promise of two absent witnesses to attend a trial,

and their unavoidable absence, is sufficient to justify a continuance. (*People* v. *Brown*, 46 Cal. 102; *People* v. *Vermilyea*, 7 Cow. N. Y. 368; *Mowat et al.* v. *Brown et al.*, 17 Fed. Rep. 718; *Brown* v. *State*, 65 Ga. 332.)

II.  An affidavit for continuance may not be rebutted by a contradiction of its statement of facts. In a word, an affidavit for continuance is not traversable. (*Horn* v. *St. of Ga.*, 62 Ga. 362; *Salisbury* v. *The Commonwealth*, 79 Ky. 425, see especially 430; *Dixon* v. *State*, 2 Tex. Ct. App. 530; *State* v. *Rainsbarger*, 74 Iowa, 200; *State* v. *Dakin*, 52 Iowa, 395, especially p. 400; *Eslinger* v. *East et al.*, 100 Ind. 434.)  It is a flagrant usurpation of the powers of a jury for the trial judge to predicate a decision of a motion for a continuance upon controverted facts touching the merits of the case. The above-cited cases, we think, clearly sustain this position.

III.  The property involved in this case was inventoried in a bill of sale signed by both parties. This written instrument (together with a check and two promissory notes) was placed in the hands of a third party, and carefully sealed in a single envelope. Both parties instructed the depositary that the envelope should not be opened nor the contents delivered until their combined assent should be given. The bill of sale and the check and notes were never delivered by the depositary, because one of the parties to the agreement refused to consent. As there was no delivery of the bill of sale, no title to the property passed from the plaintiff to defendant and hence no cause of action for its recovery or value.  (11 Am. & Eng. Ency. Law, p. 336, *et seq.; Benjamin Dietz* v. *John F. Farish*, 53 How. Pr. Rep. 217; *Miller* v. *Sears*, 91 Cal. 282.)

IV.  The admission of the telephone message in evidence, against the general objection of defendant, was such error as should reverse the case. Defendant was not a party to the message. It was received in his absence, and without his knowledge, in answer to a message sent by plaintiff in defendant's absence and without his knowledge. It was purely hearsay. It was incompetent for any purpose in any view of the case. The infirmity of incompetency appeared upon the face of the offer, and could not in any possible view of the case, or by any means, have been obviated.  (*Bornheimer* v. *Baldwin*, 42 Cal. 32-4; *Russell* v. *Brasseau*, 65 Cal.

605-7; *Espalla* v. *Richard*, 94 Ala. 159, 161-2; *State* v. *Patrick*, 107 Mo. 147, 152-3-4; *Beard* v. *Am. Car Co.*, 63 Mo. App. 390-92.)

V.   A general objection to evidence is sufficient where the incompetency or inadmissibility of the evidence offered appears upon the face of the offer, or where the proper specific objection, if made, could not be obviated. Hayne, in his excellent work on New Trial and Appeal, states the rule as follows:   "The rule then may be stated to be that objection to the admissibility of evidence must be specific in all cases where the objections could be obviated if pointed out, but that where they could not be obviated a general objection is sufficient." (Hayne on New Trial and Appeal, sec. 105, p. 297.)   Justice Rhodes, in delivering the opinion of the Supreme Court of California, applies the rule as follows: "The ruling of the court will be sustained in excluding the testimony, if its introduction is improper, without regard to the grounds of the objection stated by counsel, if the true objections could not have been obviated on being stated." (*Miller* v. *Van Tassel*, 24 Cal. 459, 463.)   This rule has been followed and applied in many decided cases, among others the following:   *State* v. *Soule*, 14 Nev. 453, 455-6; *Espalla* v. *Richard*, 94 Ala. 159, 161-2; *Nightingale* v. *Scannel*, 18 Cal. 315, 323-4, followed in *Fabian* v. *Callahan*, 56 Cal. 161; *Brumley* v. *Flint*, 87 Cal. 474; *People* v. *Gordon*, 99 Cal. 234; *Wise* v. *Wakefield*, 118 Cal. 110; *Kent* v. *State*, 42 Ohio St. 426, 430; *Spottiswood* v. *Weir*, 80 Cal. 451; *Tooley* v. *Bacon*, 70 N. Y. 34; *Quinby* v. *Straus*, 90 N. Y. 664; *Grant* v. *Cottrell*, 143 N. Y. 677-9; *Hodges* v. *Hodges*, 106 N. C. 375; *McCadden* v. *Lowenstein*, 92 Tenn. 614, 621-2; 8 Ency. Pl. & Pr. p. 228d, notes and authorities; *Hurlburt* v. *Hale*, 39 Neb. 889; *Clark* v. *Huber*, 25 Cal. 598.   See Hayne's New Trial and Appeal, sec. 105, pp. 294-9, where many authorities are cited, compared and commented upon.   In denying defendant's motion for a new trial, orally, from the bench, the learned district judge said:   "If the telephone message had had any effect upon the jury in deciding the case, the ruling might have been different, but I do not think it had any effect upon the jury." This declaration from the bench was in effect a confession of error.   No rule of law is better set-

tled than that where error is shown injury is presumed.
(Hayne's New Trial and Appeal, sec. 287, pp. 853–6, and
authorities cited.) In *Santillan* v. *Moses*, 1 Cal. 93–4, it was
said: "In such case the rule is, that, unless it can be seen
that the illegal testimony could have had no influence upon
the verdict, we ought to grant a new trial; and it is impos-
sible to tell what weight the jury allowed to the testimony
thus improperly elicited. * * * New trial granted."

*Alfred Chartz*, for Respondent:

I. A motion and affidavit for continuance was made and
filed. To this point counsel for appellant address the court,
with authorities, to the effect that two absent witnesses to
attend trial is sufficient to justify continuance. This means
that, if the lower court in the exercise of its judicial discre-
tion grants a continuance on the ground of the absence of
two witnesses, the upper or appellate court will not reverse
for that cause; and it also means that, if the lower court in
the exercise of its judicial discretion refuses to continue, it
will do the same thing. It is only the question of abuse of
discretion that the upper court will look into, and nothing
of the kind is attempted to be shown. The court says:
"You depended entirely upon their word that they would be
here." In a criminal case, as cited in *People* v. *Brown*, 46
Cal. 102, where a defendant is placed at disadvantage on
account of his position, greater latitude should be allowed
than in a civil case, where the defendant has every oppor-
tunity of defending and protecting himself. It will be
observed that at the time said case was set for trial, accord-
ing to the affidavit made on motion to postpone, said wit-
nesses were in California, and defendant took their word,
knowing they were out of the state, and knowing that his
principal witness was sick, and not knowing when or
whether she ever would get well, and yet he took no steps
to get her affidavit, thus exhibiting gross negligence.

II. An affidavit of continuance is not traversable, say
appellants. True, if it is sufficient. However, the court
states that the evidence given by Mr. Chartz was not con-
sidered on the motion for continuance.

III. The property involved in the case was inventoried by

both of the parties a number of times, and a price was set and agreed upon by both parties for each and every article, and said inventory does not include any real property, or any rights to the use or enjoyment of real property.

IV.   *Quinn* v. *White*, 26 Nev. 42:  "But if, by the terms of the contract, the note or other security for the price is to be given at once, payable at the expiration of the time for which the credit is given, in case of a default in giving the note or security, the seller may bring suit at once, just as if the contract required an absolute payment in cash."  (21 Am. & Eng. Ency. Law, 588, and a very long list of authorities therein quoted under note 2; see, also, Parsons on Contracts, 7th ed. vol. 3, p. 211, which authority is quoted and approved in *Hays* v. *Weatherman*, 14 Ind. 341; *Manton* v. *Gammon*, 7 Ill. App. 201; *Campbell* v. *Buller*, 32 Mo. App. 646; *McCormick* v. *Bassal*, 46 Iowa, 235; *Barron* v. *McMullen*, 21 Minn. 374; *Crawford* v. *Avery*, 35 Miss. 305; *Young* v. *Garrett*, 83 Tex. 497; *Hanna* v. *Mills*, 21 Wend. N. Y. 90; *Yale* v. *Coddington*, 21 Wend. N. Y. 175; *Wheeler* v. *Harrah*, 14 Or. 325; *Stephenson* v. *Repp*, 47 Ohio St. 551; *Rinehart* v. *Olewine*, 5 W. & S. Pa. 157; *Rice* v. *Andrews*, 32 Vt. 691; *Hale* v. *Jones*, 48 Vt. 227; *Foster* v. *Adams*, 60 Vt. 392; *Mussen* v. *Price*, 4 East. 147; *Dutton* v. *Solomonson*, 3 B. & P. 582; 2 La. Ann. 562.)

V.   When there has once been an acceptance by the buyer it is absolutely binding and conclusive upon him.   It renders him liable for the price agreed on, and he cannot question the quantity or quality of the goods.   (21 Am. & Eng. Ency. Law, 562.)

VI.   "The rule, we think, is well settled that a verdict which is undoubtedly right on the evidence—that is, so clearly right that, if it were the other way it would be considered contrary to the evidence—should not be set aside because of the admission of improper evidence, or the giving of incorrect instructions."   (*Robinson* v. *Imperial S. M. Co.*, 5 Nev. 78; 3 Nev. 157; 33 Cal. 299.)   "In order to justify a reversal of the case, the error should be of such character that its natural and probable effect would be to change or modify the result."   (*Fleeson* v. *Savage M. Co.*, 3 Nev. 157.)

VII.   The defendant himself testifies to the price agreed to

be paid for each article, and that he accepted the articles upon full investigation, and that he was offered his bill of sale if he would deliver the check and the notes, and that he refused, and in another part of his testimony he testifies that he was in possession of the lease of M. Cohn to Yori before he bargained with Yori, and knew the contents thereof, and that said lease by its terms forbade any transfer thereof, and he further testifies that the agreement between himself and Yori about the lease was that Yori should go off the ranch and he should go on the ranch and take his chances about the lease. This is the testimony of the defendant. Did he want his absent witnesses to testify that his own statements are not true?

VIII. "Error in excluding testimony is cured by its admission at a subsequent stage of the trial." (*Winter* v. *Fulston*, 20 Nev. 261; *Patchen* v. *Keely*, 19 Nev. 404; *Mandelbaum* v. *Liebes*, 17 Nev. 132.) The court at first sustained objections of plaintiff to questions asked plaintiff with reference to whether or not Yori did not sell defendant a lease with the other articles, but the court finally permitted the questions to be asked and permitted counsel to go fully into the matter. Further in the testimony all objections were withdrawn, and the lease about which so much ado was made was finally introduced in evidence by plaintiff himself.

IX. "The principle has long been settled that the action of the primary courts on an application for a continuance, whether granting or refusing, is matter of discretion, whether granting or refusing, and neither revisable on appeal, nor to be controlled by *mandamus*." (14 Am. & Eng. Ency. Law, 1st ed. 114; 1 Nev. 73; *Locker* v. *Child*, 11 Ala. 640.) Will not continue for absence of witness, and continuance is discretionary. (*Ex Parte Jones*, 66 Ala. 202; 1 Brickell's Digest, 874, sec. 2; *People* v. *Superior Ct.*, 19 Wend. N. Y. 701; *Louisiana* v. *Judge of Parish Court*, 15 La. 521; *Territory* v. *Ortiz*, New Mex. 5; *Palmer* v. *Jones*, 49 Iowa, 405; *State* v. *Farrer*, 20 La. Ann. 99.) See, also, *People* v. *Francis*, 38 Cal. 183, where reasons for belief that witnesses can be procured must be stated, when they reside out of the state. The character of diligence used in trying to obtain the evidence of the witness, whether by exhausting the process of the law or other-

wise should also be stated. (*People* v. *Thompson*, 4 Cal. 238, cited in 23 Cal. 158; 24 Cal. 38; 38 Cal. 188; 56 Cal. 6; *State* v. *Gray*, 19 Nev. 216.) Affidavit must state the facts. (*State* v. *O'Flaherty*, 7 Nev. 153.)

*Trenmor Coffin, Samuel Platt,* and *D. W. Virgin,* for Appellant, in reply:

I. The evidence of Mr. Chartz having been admitted by the court over appellant's objection, it does not lay in the court's mouth to say, and the court and the judge thereof are estopped to say, that the testimony would not be considered, or would have no weight in the decision of the motion, or now to say that such testimony was not considered. Respondent and his counsel, having procured this testimony to be admitted against appellant's objection, are now estopped to say that it was not considered or had no weight upon the decision of the motion. In *Mason* v. *Wolf*, 40 Cal. 246, 249, the court said: "We think this evidence inadmissible, and none the less so because the case was tried by the court without a jury." "If the court admits incompetent evidence against objection, no other inference can be drawn than that the evidence is considered entitled to some weight in the determination of the issue of fact which is being tried. A judge will not be heard any more than a juror to say that, in giving his decision, he was influenced by certain portions of the evidence, and not by others." Hayne on New Trial and Appeal, sec. 287, pp. 855–7, and authorities cited; *Spangle* v. *Dillinger*, 33 Cal. 282; *Carpenter* v. *Williamson*, 25 Cal. 163; *Humphreys* v. *Harkey*, 55 Cal. 284; *Rogers* v. *Borchard*, 82 Cal. 347, 350.) An examination of pages 11 and 12 of the statement will show that the words (page 12, at end of line 22, insert): "The evidence given by Mr. Chartz as to what Mr. Friedman would testify to has no bearing on this motion and will not be considered in deciding this motion," which words are upon a rider attached to page 12, were an inconsistent afterthought. On page 12, line 22, the court, addressing counsel for appellant, after overruling their objection to this testimony, says: "You may have the benefit of an exception." The language upon the rider, which is to follow line 22, makes the court

say that it will not consider testimony just admitted against
objection. Such action is so entirely inconsistent and con-
tradictory within itself that it is not to be attributed to, or
presumed of, a court presided over by an intelligent and
learned judge. The testimony was offered and admitted for
no other purpose than to be considered in deciding the
motion. Indeed, it could not have been offered or admitted
for any other purpose, for the reason that no other question
was before the court. The court must have considered this
testimony, because, immediately after having heard it, the
court denied appellant's motion. At lines 31 and 32 of the
same page (p. 12) the court says: "I shall not grant the
continuance, so that settles it."

II. Again, an examination of the official shorthand
reporter's report of the testimony and proceedings in the
case shows that the words contained upon this rider, attached
to page 12 of the statement, are not contained in the report,
and were not used or spoken at the time the motion was
decided, and there is no showing or suggestion in this case
that the shorthand reporter's transcript of the testimony and
proceedings is not correct. The shorthand reporter's report
is a part of the record on appeal. (Comp. Laws, 3292.)
That section provides that "to identify any (naming other
documents) testimony taken by a reporter * * * read or
referred to on the hearing (of motion for a new trial), it shall
be sufficient that the judge designate them as having been
read or referred to in his certificate to be for that purpose by
him made thereon." The language quoted indicates that it
was not the intention of the legislature to make the identifi-
cation of the record or parts of the record by the judge's
certificate, exclusive of other modes of identification, but
that section only says that that mode shall be sufficient. The
stenographer's transcript of the testimony and proceedings
in the record of this case is certified by the clerk of the court,
and is identified as having been read or referred to on the
hearing of the motion for a new trial, by the clerk's certifi-
cate and the affidavit of two of appellant's attorneys. The
affidavit states ample reasons why the transcript of testimony
and proceedings was not identified by the judge, and why it
was necessary to identify it in the manner adopted. A

judicial error occurring at the trial of a cause may be made less prominent and less apparent by additions to or diminutions of the record after trial, but neither the legal nor the actual injury suffered by the party aggrieved or injured by the error is thereby cured or remedied.

III. Counsel for respondent devotes much space in his brief to an endeavor to show that the transfer of the lease was no part of the sale by Yori to Cohn, but that Yori simply sold the personal property coupled with an agreement to "go off the ranch," and let Cohn take his chances on the lease and the possession of the ranch. Adopting this view for the purpose of argument, we submit that the evidence, taken altogether, shows that Yori refused to "go off the ranch," and that therefore the alleged sale was never consummated, nor the personal property delivered, as it was agreed that it should be delivered.

*Alfred Chartz*, for Respondent, in reply:

I. "Equity declares that he who alleges contradictory claims is not to be heard." (*Carpentier* v. *Webster*, 27 Cal. 562; *Myer* v. *Cohn*, 29 Cal. 280; *Chaquette* v. *Orket*, 60 Cal. 594.) Defendant alleges in his answer that a certain lease and leasehold right was to be delivered to him as a part of the contract. At page 72 of the statement he testified that he did not say anything about the lease. He also testified that he knew the conditions of the lease, and at page 79 he testified that he was to take his chances on the restrictive clause of the lease, and at page 80 he testified that Yori stated to him he did not want to assign the lease to him; it did not make any difference; he would be in possession, and he would take the consequences. At page 84, *et seq.*, he testified that it was agreed that Yori should go off the ranch and he should go on the ranch, and take his chances about the lease. Defendant Cohn should not now be heard on these contradictory statements, and he is bound by his own admissions made contrary to his interests. The maxim *habemus opimum testem, confitentem reum* applies to his case. He made a plenary confession as to the real terms of the contract about the lease. There was nothing left to explain; Yori was to go off the ranch, and he was to go on the ranch, and

Cohn was to take his chances on the lease. It was a self-disserving statement.

II. Counsel cites authorities to show that "A judge will not be heard any more than a juror to say that in giving his decision he was influenced by certain portions of the evidence, and not by others." But the authorities, and particularly cases he cites, do not support his contention, and are not applicable to this case. Greenleaf on Evidence, vol. 1, sec. 49, says: "In trials of fact without the aid of a jury, the question of the admissibility of evidence, strictly speaking, can seldom be raised; since, whatever be the ground of objection, the evidence objected to must of necessity be heard by the judge, in order to determine its character and value. In such cases the only question, in effect, is upon the sufficiency and weight of the evidence."

III. "A motion for a new trial can be heard only on the record made and settled before the motion is made. An order granting or refusing a new trial can be reviewed by the supreme court only on the record made and settled before the order is made." (*Quivey* v. *Gambert*, 32 Cal. 304.)

## ON PETITION FOR REHEARING.

*Alfred Chartz*, for Respondent:

I. Insufficiency of affidavit for continuance. The very best time to right a wrong is before any injury follows from it. A decision of the supreme court of this state becomes a rule of conduct, and as binding as a statute. This being the fact, petitioner most strenuously urges a searching and careful review of the authorities and investigation of the probable results of the rule announced in the majority opinion in this case. This should be granted in deference to the minority opinion as well as for any other reason; not to intimate that the court did not once carefully weigh the authorities, but claiming that a review would be beneficial.

II. "The promise of a witness to attend is an insufficient excuse." (4 Ency. Pl. & Pr. 862, and the authorities there quoted, as follows: *Wilkins* v. *Moore*, 20 Kan. 538; *Swenson* v. *Autman*, 14 Kan. 273; *Clouston* v. *Gray*, 48 Kan. 31; *Campbell* v. *McCoy*, 3 Tex. Civ. App. 298; *Texas R. Co.* v. *Hall*, 83 Tex. 675; *Mackubin* v. *Clarkson*, 5 Minn. 247;

*Lightner* v. *Menzel*, 35 Cal. 452; *Parish* v. *Gardner*, 3 Harr. (Del.) 495; *Hill* v. *Fond du Lac*, 56 Wis. 242; *State* v. *Cross*, 12 Iowa, 66; *Foster* v. *Henson*, 76 Iowa, 614; *Dimmey* v. *Wheeling R. Co.*, 27 W. Va. 32; *Doe* v. *Johnson*, 3 Ill. 523; *Day* v. *Gelston*, 22 Ill. 103; *State* v. *Shreve*, 39 Mo. 90; *Langener* v. *Phelps*, 74 Mo. 189; *Rome R. Co.* v. *Barnett*, 94 Ga. 446; *Blount* v. *Beale* (Ga. 1894) 22 S. E. Rep. 52; *Freeland* v. *Howell*, Anth. (N. Y.) 198; *Marks* v. *State*, 101 Ind. 353; *Toledo R. Co.* v. *Stephenson*, 131 Iowa, 203.)

III. "Continuances on the ground of absent witnesses who are out of the state and beyond the process of the court will only be enforced in strong and clear cases, in which three elements must occur: (1) Materiality and admissibility of the evidence; (2) Due diligence; (3) Affirmative showing that the absent witness can and will be produced at a future term." "If a person relies upon the promise of a witness to be present at a trial, he cannot obtain a continuance if the witness does not attend." "An affidavit for continuance on account of the absence of a witness in another state or county must state *facts* showing whether or not there is reasonable ground for believing that the future attendance of the witnesses can be procured. A statement by the defendant in his affidavit that he is 'confident' that he can procure such attendance is not sufficient." (*State* v. *O'Neil*, 9 West Coast Rep. (Oregon Sup. Ct. 1886) 151.) In the affidavit at bar it is stated as follows: "Affiant has *no doubt* but he can obtain the attendance of both said witnesses." So, this court must distinguish between the words "confident" and "no doubt," under a ruling that affiant must *state facts* showing whether or not there is reasonable ground for believing that the future attendance of the witness can be procured, as stated in *State* v. *O'Neil*, *ante*. It is submitted that words "no doubt" don't show the facts any better than the word "confident."

IV. "Affidavits are construed strictly and most strongly against the applicant, and it is not strengthened by any presumption in its favor. It must show positively that due diligence has been exercised by the party applying. * * * The statements should be made definite and specific enough

that an indictment for perjury will lie if they are false."
(Am. Eng. Ency. Law, vol. 3, 1st ed. p. 807.)

V. "Material facts must be stated positively." Affiant
averred on information and belief that the sheriff had been
informed of the place where the witness would be found.
Held, that the fact should have been stated positively in the
affidavit." (*State* v. *Tim O'Flaherty*, 7 Nev. 153.)

VI. "An affidavit for continuance in a criminal case on
account of the absence of witnesses should give assurance
of their attendance at the time to which it is proposed to con-
tinue, and show the means of affiant's information; and
unless such attendance seems probable, the continuance
should be denied." (*State* v. *Rosmurgey*, 9 Nev. 308.)

VII. "It (the affidavit) states only the ultimate fact or
conclusion, to wit: That they had reason to believe their
attorney would attend to the case, instead of stating the
probative facts upon which the belief was based. * * *
Whether they did have reason to so believe was a question
to be determined by the district court upon the facts consti-
tuting the grounds of belief." (*Brown* v. *Warren*, 17 Nev.
420.) Compare that with the affidavit of Cohn that he used
all "practicable and possible diligence," and it would seem
difficult to distinguish them sufficiently to say that one is
good and the other bad.

VIII. It is respectfully submitted that the testimony of
Elkan Cohn is all-sufficient to justify the verdict, irrespect-
ive of any other testimony in the case. He bought the goods
at an agreed price; he received them, and accepted them, and
dealt with them as his own for weeks, and never offered to
return any of them, but simply refused to pay; he never
raised any question about the lease until after he was sued,
and that was an afterthought, raised by his attorneys; he
never asked for any assignment of said lease, and never
objected to the character of his possession until after he was
sued.

By the Court, FITZGERALD, J.:

Plaintiff recovered judgment in the trial court for the sum
of $18,236.69, being, as plaintiff alleged, the balance due on

a contract of sale by the plaintiff to the defendant of certain personal property; the contract price therefor being $20,241.69, and the defendant having paid the sum of $2,005, thus leaving unpaid the said sum of $18,231.

Defendant denied that the contract was for the sale of the personal property only, but alleged that a certain lease and leasehold right was to be assigned by plaintiff to defendant, and that the sum of $20,241.69 was the price agreed to be paid for both said personal property and said lease and leasehold right.

Defendant further alleged that the plaintiff failed and refused to assign said lease and leasehold right to him, thus breaking the contract.

Defendant pleaded the above-mentioned breach of contract as his defense, and claimed of the plaintiff damages for said alleged breach the sum of $10,000. .

Defendant also alleged that the said personal property was not worth the sum of $20,246.69, or any greater sum than $10,000. The defendant appealed from the said judgment, and also from the order of the trial court denying his motion for a new trial.

The defendant moved for a continuance in the case. The court denied the motion, and defendant assigned the said denial as error. The facts concerning this assignment of error, as they appear by the settled and certified statement on appeal, are as follows:

"The defendant moved for a continuance of said cause upon the ground of the unavoidable absence of material and necessary witnesses in said cause, to wit, the absence of Joseph Friedman and Minnie Friedman, his wife. Said motion was made upon the following affidavit, to wit: 'In the District Court of the First Judicial District of the State of Nevada in and for the County of Douglas. L. Yori, Plaintiff, vs. E. Cohn, Defendant. State of Nevada, County of Douglas—ss. Elkan Cohn, being duly sworn, on oath deposes and says: That Joseph Friedman and his wife, Mrs. Friedman, are important and material witnesses for him (defendant) upon the trial of the above-entitled cause. That both of said witnesses are at present at Stockton, San Joaquin county, California, and that on account of the sick-

ness of said Mrs. Friedman both of said witnesses are unable
to attend and be present at the trial of the above-entitled
action.

"'The affiant, the said defendant, cannot safely proceed to
trial in the above-entitled action without the presence and
testimony of both of said witnesses, and that he cannot show
or prove the same matters and facts which he expects to
prove by said witnesses by any other persons, and particu-
larly as to the said witness Mrs. Friedman. That by the
witness Joseph Friedman affiant expects to prove and show
and establish all of the allegations, matters, facts, and state-
ments set out and contained in his answer to the plaintiff's
complaint in the above-entitled action; i. e. expects to prove
the agreement between plaintiff and defendant, and the non-
performance of said agreement on the part of said plaintiff
as stated in said answer, and all other material allegations
therein.

"'That by the said witness Mrs. Friedman, affiant expects
to prove all of the allegations contained in his said answer
concerning the non-delivery of the property which the defend-
ant claims in his answer that plaintiff sold him; and the
plaintiff has and did deprive this affiant, the said defendant,
of whatever of possession or partial possession of the said
property he had previously placed him in, or delivered to
him; and that plaintiff has and did by fraud, force, and
arms, etc., as alleged in the answer, retake and recover from
defendant whatever of partial possession he had previously
given and delivered of said property and ranch to defendant;
and other matters alleged in said answer. That affiant has
used all practicable and possible diligence in endeavoring to
obtain the presence and attendance of both of said witnesses
since the setting of this action for trial.

"'That the said witnesses wrote to this affiant that they
would be here at the trial of this action, and according to
his best knowledge, information, and belief said witnesses
are only prevented from being here by said sickness of said
Mrs. Friedman; and, if the trial of this action is postponed
for a short time, affiant has no doubt but he can obtain the
attendance of both said witnesses. That at the time this
case was set for trial said witnesses were in California, and

beyond the jurisdiction of the process of this court. Wherefore affiant prays that said trial of this action be continued for two or three weeks to enable him to have the attendance of said witnesses. Further affiant saith not. E. Cohn. Subscribed and sworn to before me this 16th day of Oct., 1899. N. Blossom, Clerk.'

"Also upon the following telegram: 'Stockton, Cal. To Sam Platt: My wife very sick. Cannot come till twenty-third. Answer. J. Friedman.' Also upon the following letter: 'Homestead, Oct. 13, 1899. Elkan Cohn, Carson City, Nev.—Dear Sir: Yours of the 11th was received by me last evening. In answer will state that Mr. Friedman and I will come without fail to attend the case. I look for Mr. Friedman home from the city Saturday morning. We will wire, and let you know when we leave here, so you can have the case come up when we get there. Hoping you are in good health, I will close, with kindest regards to yourself and brother, Toby. Respectfully, Mrs. J. Friedman.'

"Alfred Chartz, Esq., attorney for plaintiff, was sworn in rebuttal of said affidavit and in opposition to said motion for a continuance as shown by the stenographer's report of the testimony and proceedings herein, as shown upon pages 11 to 13 of this statement. Said affidavit was read to the court, but the court denied plaintiff's motion for a continuance of the trial of said cause, to which refusal and ruling defendant duly excepted."

"Monday morning, Oct. 16, 1899. The case of L. Yori, Plaintiff, v. Elkin Cohn, Defendant, called.

"The Court: Are you ready to try this case?

"Mr. Virgin: If your honor please, the defendant has received a telegram from two important witnesses in this action. On account of sickness, they are unable to be here at this time, and the defendant has made an affidavit showing what I consider good grounds for a continuance. I ask that the case be continued for a week or two, so as to allow these two witnesses, a man and his wife— The wife is ill; too ill to accompany the husband, and the husband does not want to leave a sick wife; and we need the attendance of both witnesses. I will read the affidavit of Elkin Cohn as to the sickness of Joseph Friedman and his wife. If your

honor please, the court cannot understand the materiality of this affidavit without the reading of the answer. I will read the answer, and then your honor will understand whether these allegations are material or not. (Answer read.) Now, if your honor please, what we expect to prove by Joseph Friedman is the whole transaction, and Joseph Friedman knew all about it, because, as will be shown, made this arrangement as between Mr. Yori; that is, as I understand it, he was commissioned so to speak by Mr. Yori for so much to sell this lease to Elkin Cohn. Could you imagine a more material witness?

"Mr. Chartz: We will object to any continuance, on the ground that no diligence has been taken.

"Mr. Virgin: We offer, if your honor please, this telegram, and we ask permission of your honor to read it: 'Stockton, Cal., Oct. 15, 1899. To Sam Platt, Carson City, Nevada: My wife very sick. Cannot come till 23d. Answer. [Sg.] Joseph Friedman.'

"Mr. Chartz: No proper diligence has been exercised. Here is simply a statement, and no precaution has been taken to prove it; no certificate from a competent physician; absolutely nothing to show that this affidavit is true. Furthermore, we claim under the affidavit that the parties were in California—these two important witnesses. These two important witnesses were beyond the jurisdiction of this court at the time of the setting of this case, and defendant had ample time to move the court to take their depositions; but, instead of that, an attempt was made to get me to subpena them, so as to bind me by their testimony. I will show you that it is utterly false. I claim that the affidavit is utterly false. I got a telegram, too. 'Stockton, Cal., Oct. 13, 1899. Mr. Chartz, Attorney at Law, Carson, Nevada: Please send subpenas by registered mail for Joseph and Minnie Friedman to Homestead, Cal. [Sg.] Minnie Friedman.'

"Mr. Chartz: And I will show, if your honor please, that Elkin Cohn took a team, and drove Joseph Friedman out of town, and he knows it very well.

"Mr. Platt: If your honor please, I take an exception to the statement of counsel.

"Mr. Chartz: These people wanted to come through me.

Now, they claim an undelivery of possession, misrepresentation, and the fraud they charge.

"Mr. Platt: I object to any argument of counsel as to the merits of this case. I interpose an objection.

"The Court: Argue simply to the motion, Mr. Chartz.

"Mr. Chartz: I claim that they have not used proper diligence, and they should have taken the depositions of these people. It is a great expense to bring the jury and witnesses here, and we are ready for trial, and they have used no means at all to accomplish their purpose.

"Mr. Platt: May it please the court, I call your attention to the date of that telegram, October 15, 1899—yesterday, Sunday. It was sent from Stockton upon that date, and would have been impossible to secure the certificate of a competent physician to present before this court. We ask for this continuance on the ground that we have used all due diligence, on the ground that this telegram came at the last moment, and we could not get any better evidence than this telegram. If we could have gotten a physician's certificate, we would have done so; but we claim this is the best evidence of these parties' sickness. and they are unable to be present.

"Mr. Virgin: I want to call your honor's attention to a letter that was received by Mr. Cohn on the same day as Mr. Chartz's telegram. 'Elkin Cohn, Carson City, Nevada: Yours of the 11th was received by me last night. In answer will state that Mr. Friedman and I will come without fail to attend the case. I look for Mr. Friedman home from the city Saturday morning. We will wire and let you know when we will leave here, so you can have the case come up when we get there. Hoping you are in good health, I will close, with kindest regards to yourself and brother, Toby. Respectfully, Mrs. J. Friedman.'

"Mr. Chartz: I will call your honor's attention to the fact that there are no subpenas for these people at all.

"Mr. Virgin: These parties were both here at the time Mr. Friedman was here, about the day prior to the time this case was set for trial, and Mr. Cohn supposed he would remain here all this time.

"Mr. Chartz: I desire to be sworn, if your honor please.

(Mr. Chartz sworn to testify.)  If your honor please, I had many conversations with Mr. Friedman and a man by the name of Davis.  Both told me that the lease was no part of the sale.  The lease was not to pass.

"Mr. Platt:  I object to any such testimony.  It goes to the merits of this case.  The case has not been tried.  He is not a witness capable of testifying until the case is tried upon its merits, and I contend that he be held now to the record.

"The Court:  Proceed.  (Defendant excepts.)

"Mr. Chartz:  Mr. Friedman so stated in the presence of Mr. Platt in his office.

"Mr. Virgin:  Q.  You say that Mr. Friedman stated to you that this lease was not to pass?  A.  No lease to pass whatever; right in Mr. Platt's office.

"Q.  That, according to the original agreement between the parties, there was to be no lease included in the sale?  A.  That is right.

"Q.  Was there anything said in regard to anything on the part of Mr. Friedman?  Did he say there was anything to pass besides this personal property?  A.  The price agreed upon was upon the personal property, and no lease in it.  If you will call my attention to the matters, I will tell you all about it.

"Q.  Was it to give him possession of the personal property?  A.  They were not on the Klauber ranch at the time.

"Q.  Was the possession of the Klauber ranch to go into the sale?  A.  No possession whatever except the sale of the personal property.

"Q.  Now, didn't Mr. Friedman state—if your recollection is so good—did he not state that Mr. Cohn was to be put in the possession of the Klauber ranch?  A.  He was in the possession of the Klauber ranch.

"Q.  Did he so state?  A.  Nothing of the kind.

"Q.  Was there anything to be included in the consideration of the payment of this, Mr. Chartz—any sum of money besides this personal property that you mentioned in your complaint?  A.  No, sir.  Mr. Platt advised him to deliver those notes over to us.

"Q.  What notes?  A.  There were some notes in Mr. Platt's possession.

"Mr. Platt: If your honor please, all this testimony is to go in under my objection.

"The Court: You may have the benefit of the exception. 'The evidence given by Mr. Chartz as to what Mr. Friedman would testify to has no bearing on this motion, and will not be considered in deciding the motion.' (C. E. Mack, district judge.) As matters now stand, I will not continue it on that affidavit and telegram. Your witnesses were not within the jurisdiction of the court. You relied entirely upon their promise to come. You took no steps to get their depositions, as shown at the present. I cannot continue this case. If you made an attempt to get their depositions, I would relieve you in case anything had gone wrong. It would be unreasonable to continue this case. The case was set down some days ago. I shall not grant the continuance; so that settles it.

"Mr. Virgin: We ask for an exception.

"Mr. Platt: We ask that the letter and telegram be made a part of the affidavit.

"Mr. Chartz: We object to the affidavit and the letter and telegram on the ground that they are incompetent, irrelevant, and immaterial.

"The Court: The ruling is made.

"Mr. Platt: I ask there be a ruling upon this.

"The Court: There is nothing to rule upon. (Defendant excepts.)

"Mr. Virgin: I ask to introduce this.

"The Court: I do not know whether it is a telegram from them or not. Upon this mere statement that they are sick, and unable to be present here at this time, after two weeks in which to get their depositions—you depended entirely upon their word that they would be here. No showing is made that you used any diligence in getting testimony that was beyond the reach of this court. You depended entirely upon their word that they would come. I do not feel warranted to continue the case. Proceed, and, Mr. Clerk, call the names of twelve jurors."

We think, under the showing made by the defendant, he was entitled to a continuance, and we cite the following cases: (*Johnson* v. *Mills*, 31 Neb. 524; *State* v. *Roark*, 23

Kan. 147; *Knauer* v. *Morrow*, Id. 360; *People* v. *Brown*, 46 Cal. 102; *Mowat* v. *Brown*, (C. C.) 17 Fed. 718.)

In *Johnson* v. *Mills*, *supra*, the affidavit stated that a codefendant resided out of the state, and was the only witness by whom certain material facts could be proved; that affiant had gone to the home of his codefendant, and obtained his promise to be present at the trial, but for some unexplained cause he had failed to come; and that his testimony could be procured at the next term.

The court said: "The witness resided out of the state, and his attendance could not be compelled by the process of the court. The issuing of a subpena would have been unavailing. True, his deposition could have been taken, but Johnson had the right to rely upon the promise of his codefendant that he would be present and testify at the trial."

In *People* v. *Brown*, 46 Cal. 102, defendant was indicted February 10, 1873. The cause came on for trial March 8th. Witnesses residing in the State of Nevada had promised defendant that they would be present, and, relying upon their promise, he omitted to take their depositions. It was held that a continuance should have been granted. Counsel for respondent contends that this error was cured by the evidence given on the trial of the case. We think the said evidence did not work a cure. The evidence was conflicting, but it did not cure the error mentioned. On proper showings being made, motions for continuances should be granted. The court always has the power to prevent abuse of such motions by imposing terms on which the motions are granted.

Judgment reversed, and cause remanded for a new trial.

BELKNAP, J.: I concur.

MASSEY, C. J., dissenting:

I cannot concur.

Our statute provides that a motion to postpone a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it. (Comp. Laws, 3255.)

While it is true the affidavit upon which appellant based

his motion states that he had used all possible and practicable diligence to obtain the attendance of the Friedmans, it utterly fails to state what, if anything, was done to that end. The statement is a mere conclusion, and not a fact. It should have shown the facts—what steps had been taken to procure the evidence. And upon such showing it became the duty of the court to say whether due diligence had been used.

It appears from the affidavit that the witnesses resided in California at the time the cause was set for trial, which fact the appellant well knew. He also knew that their evidence was material to his defense. He took no steps whatever to procure their testimony, but relied solely upon their promise to be present at the trial—a promise which he could not enforce by any process of the court.

It seems to me that, under the provisions of the statute cited, which makes no distinction as to the showing required by the affidavit on account of the absence of evidence or without the jurisdiction of the court, some legal steps should have been taken to procure such testimony, in order to authorize the court to say that due diligence had been used.

It would be just as reasonable, under the requirements of the statute, to allow continuances on account of absent witnesses within the jurisdiction of the court, under promise to attend without service of process, as to allow continuances because of the absence of evidence of witnesses living without the jurisdiction of the court, under promise to attend the trial, where no attempt has been made to take the deposition of such witnesses, in a case where such deposition could have been taken before trial.

No court, so far as I have been able to find, has ever held that the promise of a witness within the jurisdiction of the court to attend the trial excused the failure of the party to use the process of the court to procure the attendance of such witnesses. All the authorities seem to hold the other way. (4 Enc. Pl. & Prac. 862, note 12.)

The facts surrounding a particular case might create an exception to the general rule, and I believe that the rules of the cases cited in the opinion are based upon the peculiar facts surrounding each case.

In the case at bar it appears that the depositions of the

witnesses could have been taken in time for use upon the trial.

Nothing was done in that direction, and I do not believe that appellant can excuse his failure in that respect by relying upon their promise to be present.

### ON REHEARING.

By the Court, BELKNAP, J.:

The judgment was reversed upon the ground that a continuance should have been granted. (*Yori* v. *Cohn,* 65 Pac. 945.)

A rehearing has convinced me that the judgment should have been affirmed, for this reason: The affidavit for continuance shows that at the time the case was set down for trial in the district court the witnesses for whose absence the continuance was asked were in the State of California, and beyond the jurisdiction of the courts of this state. Under these circumstances it was the duty of appellant to have procured their depositions. Their promise to be present at the trial will not excuse him if they do not attend.

A preliminary motion was made by counsel for respondent to strike from the files a document styled "Reporter's Transcrit of Testimony" for reasons specified in the notice, one of which was that it is not certified by the district judge, or designated by him as having been read or referred to on the motion for new trial, nor agreed to by the attorneys in the case as having been so used.

Practically the same question, and upon the same testimony, was before us in a proceeding in *mandamus* commenced by appellant against the district judge requiring him to identify this same testimony, or to show cause, etc.

At the hearing in that case the testimony of the district judge was to the effect that the statement had not been agreed to by counsel, and that he had in fact settled it after notice given, and that the testimony here mentioned was not used or referred to on the hearing of the motion for new trial. Testimony tending to support appellant's position was also introduced, but the court held that, as the testimony was conflicting, appellant had failed to establish a clear legal right to the writ, and it was therefore denied. (*State* v. *Mack,* page 80, *ante.*)

The purpose of appellant in that proceeding was, and his opposition to this motion is, to make the testimony which the certificate of the district judge impliedly, and his evidence directly, shows was not read or referred to upon the hearing of the motion for new trial, a part of the record on appeal in this case.

By Section 197 of the civil practice act it is made the duty of the judge to settle statements upon motion for new trial which have not been agreed to. Allowing proper credit to the certificate, it appears therefrom that the statement was not satisfactory to the opposite party as originally prepared, and that the judge determined the claims of each side according to the facts, and made the statement conform to the truth.

His certificate that the statement had been allowed by him, and is correct, is the authoritative record in this court, and cannot be impeached by extrinsic evidence. If defective or incorrect, it must be corrected in the district court. (*Gardner* v. *Railway Co.*, 68 Iowa, 588; *Pennsylvania Co.* v. *Sears*, 136 Ind. 460; *Bonds* v. *Hickman*, 29 Cal. 460.)

At the close of plaintiff's case a non-suit was moved upon the ground that the bill of sale had not been delivered to the vendee; that, therefore, no title had passed, and the suit was prematurely brought. Testimony had been introduced tending to prove that the property described in the complaint had been sold and delivered to the defendant. If there was a condition in the bill of sale or in the agreement of the parties by which title was not to pass except by the delivery of the bill of sale to the vendee, it was a condition favorable to the vendor, and solely for his security in the matter of payment. He could have waived the condition if he chose, and did voluntarily waive it, in fact, by delivering the property to the vendee. The motion was properly overruled.

Numerous exceptions appear in the record as having been taken at the trial to the rulings upon evidence. Those to which importance is attached are cured, if error occurred, by the subsequent admission of the excluded testimony. A telephone message was introduced in evidence from a bank in Reno to the effect that it would honor appellant's check for the sum demanded in the complaint. This evidence had no

bearing upon any issue, and should have been excluded, but its admission could have done no possible injury to the appellant.

The exceptions touching the instructions have not been argued, and need not be considered, for the reason that the facts established show that the judgment is so clearly right that it should not be reversed for error, if there were error, in admitting or excluding evidence or the giving of an erroneous instruction.

The action was to recover judgment for $20,246.69, less admitted credits upon a sale of personal property. Appellant admitted the purchase, but defendant upon the ground that respondent had agreed, in connection with the sale, to assign a lease which he had of the Klauber ranch, where the property was; that he had not assigned the lease, and that the property, without the leasehold right, was of little or no value to appellant; that respondent had also agreed to sell none but sound and healthy cattle, and the cattle sold were unsound and unhealthy, and he claimed damages in the sum of $10,000, caused by respondent's interference with the possession of the property.

At the trial respondent contended that he had never agreed to assign the lease of the ranch for reasons which need not be stated, but he had agreed that he would leave the ranch, and appellant could take it, and assume the risk of possession, with the owner of the legal title.

Upon cross-examination appellant himself corroborated this view. He also testified to the correctness of an inventory containing a list of the property, and the agreed price for each item; that he counted the cows, weighed the cheese and butter, estimated the value of the hay, and accepted the property at the prices set opposite the several items; that the price for all was $20,246.69; that respondent never interfered with his possession, except by the attachment by the sheriff for its purchase price.

By these admissions appellant abandoned all defense to the action except as to the condition of the cattle. There was a contention upon this subject, but, conceding all that may be claimed by the evidence, it could not materially affect the verdict.

It is ordered that the judgment and order be affirmed.

Massey, C. J.:   I concur.

Fitzgerald, J., dissenting:

I dissent for the reasons stated in the original opinion in this case.